IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LISA L. EDWARDS, §
§
    Plaintiff, §
§
V. § CIVIL ACTION NO. H-13-1480
§
CAROLYN W. COLVIN, COMMISSIONER §
OF THE SOCIAL SECURITY §
ADMINISTRATION, §
§
    Defendant. §

### MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 19) and Defendant's cross Motion for Summary Judgment (Document No. 16). Having considered the cross motions for summary judgment, the parties' additional briefing, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

## I.    Introduction

Plaintiff Lisa Edwards ("Edwards") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision

---

[1] On December 18, 2013, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 14.

of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB"). Edwards maintains in this appeal that: (1) "The ALJ erred in finding that plaintiff's impairments are not of listing level severity;" (2) "The ALJ"s RFC finding is not supported by substantial evidence;" and (3) "The ALJ erred in relying on the Medical Vocational Guidelines to find that the plaintiff can perform other work existing in significant numbers in the national economy." Plaintiff's Motion for Summary Judgment (Document No. 19) at 3, 4. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, and that the decision comports with applicable law.

## II.    Administrative Proceedings

On or about December 14, 2010, Edwards applied for DIB, claiming she has been unable to work since October 18, 2010, as a result of low back pain, numbness in her lower body, trouble sleeping, inability to lift objects, and difficulty walking for long periods of time. (Tr. 116-117; 137-145). The Social Security Administration denied the application at the initial and reconsideration stages. After that, Edwards requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Susan J. Soddy, held a hearing on May 1, 2012, at which Edwards' claims were considered *de novo*. (Tr. 27-49). On August 3, 2012, the ALJ issued her decision finding Edwards not disabled. (Tr. 13-22).

Edwards sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions,

2

findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. §
416.1470. On April 5, 2013, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's
decision thus became final.

Edwards filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). The parties have
filed cross motions for summary judgment (Document Nos. 16 & 19). The appeal is now ripe for
ruling.

## III.  Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether
substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's
decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).
Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings
of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall
be conclusive." The Act specifically grants the district court the power to enter judgment, upon the
pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of
Social Security, with or without remanding the cause for a rehearing" when not supported by
substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record
in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236
(5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor
substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against
the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v.
Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts

3

in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him,
or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one

is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in

any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting

*Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.   If the claimant is presently working, a finding of "not disabled" must be
     made;

2.   If the claimant does not have a "severe impairment" or combination of
     impairments, he will not be found disabled;

3.   If the claimant has an impairment that meets or equals an impairment listed
     in Appendix 1 of the Regulations, disability is presumed and benefits are
     awarded;

4.   If the claimant is capable of performing past relevant work, a finding of "not
     disabled" must be made; and

5.   If the claimant's impairment prevents him from doing any other substantial
     gainful activity, taking into consideration his age, education, past work
     experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v.*

*Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden

of proof on the first four steps of the analysis to establish that a disability exists. If successful, the

burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.

*Perez v. Barnhart,* 415 F.3d 457, 461 (5TH Cir. 2005). Once the Commissioner shows that other jobs

are available, the burden shifts, again, to the claimant to rebut this finding. *Id.; Selders v. Sullivan,*

914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that

the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Edwards had not engaged in substantial gainful activity since October 18, 2010, her alleged onset date. At step two, the ALJ found that Edwards' "lumbar disc herniation with radiculopathy and obesity" were severe impairments. (Tr. 16). At step three, the ALJ concluded that Edwards did not have an impairment or combination of impairments that met or medically equaled a listed impairment, including Listing 1.04. The ALJ then, prior to consideration of steps four and five, determined that Edwards has the residual functional capacity ("RFC") to perform a limited range of sedentary work subject to the following limitations: "only occasional use of her right foot for controls, and she cannot climb ropes, ladders, or scaffolds, but she can occasionally climb stairs and ramps, stoop, kneel, crouch or crawl. She cannot work around hazards such as unprotected heights and/or dangerous/moving machinery. She is limited to occasional operation of a motor vehicle, and occasional work around humidity and wetness, extreme cold and vibrations." (Tr. 17). At step four, using that RFC and relying on the testimony of a vocational expert that Edwards' past work was medium in exertion, the ALJ determined that Edwards could not perform her past work as a warehouse order selector. At step five, using that same RFC and considering Edwards' age, education, and work experience, and the Medical Vocational Guidelines, the ALJ concluded that there were jobs in significant numbers in the national and regional economy that Edwards could perform, and that she was, therefore, not disabled.

In this appeal, Edwards first argues that the ALJ erred at step three when she determined that Edwards' back impairment did not meet or equal Listing 1.04A. Edwards also argues that the ALJ's RFC finding is not supported by substantial evidence. Finally, Edwards argues that the ALJ erred when she relied on the Medical Vocational Guidelines to find her not disabled.

In determining whether there is substantial evidence to support the ALJ's decision, including his assessment at step three, the court considers four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

## V.    Discussion

### A.    Objective Medical Evidence

The objective medical evidence in the record shows that Edwards suffers from a back impairment (degenerative disc disease), resulting in lower back pain, right leg pain, and numbness in her right leg. She was treated surgically for that impairment in December 2010. While there is also medial evidence in the record as to Edwards' diabetes, carpal tunnel syndrome, and hypertension, it is Edwards' back impairment and the limitations associated therewith that form the basis of her appeal of the Commissioner's decision denying her application for DIB. As such, it is the record evidence that is related to Edwards' back impairment that will be considered herein. That objective medical evidence in the record related to Edwards' back impairment spans the time period from October 2010 through May 2012.

On October 19, 2010, Edwards was seen by Dr. Rhee for her complaints of lower back pain, which was initially diagnosed as a lumbar strain. When Edwards' symptoms did not improve with medication and after an MRI revealed a L5-S1 disc protrusion to the right, a disc fragment that protruded to the right, and that both her right L5 and right S1 nerve roots were impinged (Tr. 177),

7

Dr. Rhee referred Edwards to a neurologist, Dr. Rossi. (Tr. 184-186, 190). On November 17, 2010, an EMG conducted by Dr. Rossi showed right L5 radiculopathy, carpal tunnel syndrome, and mild diffuse motor sensory polyneuropathy. (Tr. 185).

Edwards' symptoms continued, and on December 9, 2010, Dr. Rhee referred Edwards to Dr. Kraus for a surgical consultation. (Tr. 188). During this consultation, Edwards was unable to walk on her heels or toes in the right lower extremities and a straight leg raising test was positive on the right. Her strength was reported to be 2/5 in the right gastrocnemius and about 3/5 dorsiflexion of the right hip. (Tr. 295). After discussing her options with Dr. Kraus, Edwards elected to undergo surgery approximately two weeks later.

On December 27, 2010, Edwards reported to Humble Surgical Hospital and underwent back surgery that involved a "bilateral L5 complete laminectomy and bilateral upper S1 laminectomy for decompression and diskectomy of hard right-sided and central calcified disk." (Tr. 205). She was discharged the following day.

Edwards had a follow-up visit with Dr. Kraus on January 4, 2011. (Tr. 298). During this examination, Edwards was noted as having improved symptoms compared to preoperatively. She still had numbness in her lower extremities, but less weakness. She had 3+/5 strength in the gastrocnemius, where it had previously been less. Edwards could move by ambulating with a walker. Dr. Kraus noted that he was pleased with her amount of improvement. A second follow-up visit with Dr. Kraus took place approximately three weeks later, on February 1, 2011. (Tr. 299). By this time, Edwards' symptoms had improved even more. Edwards commented that her right lower extremity pain had lessened and was now better than it had been preoperatively. There was only slight numbness in her right foot. Her walking ability had improved to the point that she only had

8

slight difficulty walking on her heels and toes. Edwards also told Dr. Kraus that she thought her strength was greater than it had been before surgery.

On February 23, 2011, Edwards had a neurology follow-up with Dr. Rossi and a second EMG was conducted. (Tr. 300, 333). It showed lumbar radiculopathy, which the physician noted was improving gradually, and polyneuropathy Edwards complained of pain and numbness in the right leg, but also told the doctor that her lower back pain was better.

On March 23, 2011, a second MRI scan showed only a very small bulge at L4-5 and L5-S1 (Tr. 305), but Edwards complained of renewed back pain. There were no further follow-up treatments despite her doctors advising otherwise.

On April 5, 2011, approximately four months after her surgery, Edwards underwent a consultative examination with Dr. Beaty. (Tr. 336-340). During that examination, Edwards appeared to be well-developed and oriented and responsive. She was noted as having a slow gait and being able to ambulate with the assistance of a walker due to balance issues. Despite this, Edwards was able to walk around the examination room without the assistance of her walker with little difficulty, and could get on and off the examination table without assistance. Edwards also had no trouble walking to the examination table without using her walker.

A second consultative examination, conducted by Dr. Frank Barnes, took place on May 24, 2014, approximately seventeen months after Edwards' back surgery. (Tr. 346). During that examination, Edwards walked with a mild right antalgic limp without the assistance of her cane, had no tenderness in her lumbar spine, and there was no list or spasm or rigidity, and her straight leg tests were negative while sitting. (Tr. 354).

Edwards' first claim, that the ALJ erred in concluding that she did not meet Listing 1.04A,

is without merit.  The objective medical evidence in the record supports the ALJ's conclusion at step

three that Edwards did not meet or equal Listing 1.04A.

> Listing 1.04A provides for presumptive disability for spinal disorders as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthrosis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

>> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

But, for any disability determination to be made, even under the Listings, the disabling condition

must be found to last, or be expected to last, "for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).  Section 1.00H1, which notes the importance of a longitudinal record for

back impairments, takes this into account:

> 1.    *General.*  Musculoskeletal impairments frequently improve with time or respond to treatment.  Therefore, a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment unless the child is a newborn or the claim can be decided favorably on the basis of the current evidence.

Here, Edwards argues by reference to certain findings made prior to her surgery and in the

first few months after her back surgery, that there is objective medical evidence that relates to each

of the requirements for presumptive disability under Listing 1.04A.  However, a claimant must meet

all of the requirements of Listing 1.04A for the longitudinal record, including a positive straight leg

test in both the sitting and supine position.  While Edwards cites to Dr. Beaty's findings in April

2011, when she had a positive straight leg test in both the sitting and supine position (Tr. 313),

Edwards ignores the finding of Dr. Barnes in May 2012, when she did not have a positive straight leg test in the sitting position. Further, other evidence was present to show that Edwards' condition had improved following her back surgery in December 2010 such that she did not longitudinally meet all the requirements of Listing 1.04A, particularly as of May 2012. She only had slight muscle loss in her right toe, while the "all other functions [in her right leg were] normal." (Tr. 355). The determination by the ALJ that Edwards did not meet or medically equal the requirements of Listing 1.04A is supported by the objective medical evidence in the record.

The objective medical evidence in the record also supports the ALJ's RFC determination. During Edwards' consultative examination with Dr. Beaty, she had no trouble moving around the examination room. (Tr. 18, 311). Additionally, the claimant "was able to walk on her toes on the left, but unable to walk on her toes on the right secondary [due] to weakness. She was able to walk on her heels bilaterally." (Tr. 313). Her consultative examination with Dr. Barnes a year later showed that when walking with a cane "she only had a mild right-sided antalgic gait" (Tr. 354-355), and "her simulated rotation only caused mild lumbar spine pain, and that her muscle strength in her legs was fine except for her right toe." (Tr. 355). The objective medical evidence factor therefore supports the ALJ's determination at step three and her subsequent RFC determination.

**B.     Diagnosis and Expert Opinions**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981); *see also Newton v. Apfel*, 209 F.3d 448, 455

(5th Cir. 2000) ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should be accorded great weight in determining disability."). In addition, a specialist's opinion is generally to be accorded more weight than a non-specialist's opinion. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Further, regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). Further, a claimant who fails to follow prescribed treatment without a good reason will be found not disabled. Social Security Ruling 82-59.

There are no expert medical opinions in the record that would support the conclusion that Edwards' back impairment meets or equals Listing 1.04A, and no expert medical opinions in the record that would support the conclusion that Edwards is unable to engage in any substantial gainful activity. Drs. Rhee, Krause and Rossi did not assess or opine about Edwards' work-related activities, but Dr. Beaty and Dr. Barnes each did. As set forth above, Dr. Beaty conducted a consultative examination of Edwards in April 2011, approximately four months after her back surgery. (Tr. 310-314). Following the examination, Dr. Beaty's opinion on Edwards' work-related difficulties were fairly inconclusive since Edwards was still recovering from surgery. Dr. Beaty wrote in this regard:

> It is my opinion that the prognosis at this time is difficult to assess. The claimant is still in the post-operative period and is unsure of and pending treatments or rehabilitation. At this time, due to the use of the walker and the claimant's difficulty

with balance, I do not believe that she is able to lift or carry. She can handle objects while sitting and she can hear and speak. She can stand and move about, but not for long distances without assistance. Additionally, there may be lifting restrictions in the future. The claimant was strongly advised to take her blood pressure medications and to follow-up with her personal physician.

(Tr. 314).

Dr. Barnes' post-trial consultative exam took place on May 24, 2012, approximately seventeen months after Edwards' surgery. (Tr. 346-355). Following his examination of Edwards, Dr. Barnes opined in a "Medical Source Statement of Ability to Do Work Related Activities (Physical)" that Edwards could lift and carry ten pounds, and at most twenty pounds; that she could not stand or walk for more than twenty minutes at a time, but she could sit for two hours; that even with Edwards' use of a cane, she could still use her hands for "reaching, handling, fingering, feeling, and pushing/pulling;" that she only occasionally use of her right foot for foot controls; that she could not climb ladders or scaffolds, but she could occasionally climb stairs and ramps, stoop, kneel, crouch, or crawl; and that she could not work around unprotected heights or moving mechanical parts, and could only occasionally operate a motor vehicle and work around humidity and wetness, extreme cold, and vibrations.

The ALJ's RFC determination is consistent with Dr. Barnes' diagnosis and his functional capacity opinions in that it limited Edwards to jobs that (1) only required "occasional use of her right foot for controls;" (2) only required Edwards to "occasionally climb stairs and ramps, stoop, kneel, crouch or crawl;" (3) limited Edwards to only "the occasional use of a motor vehicle;" (4) only required the occasional work "around humidity and wetness, extreme cold and vibrations;" (5) did not required the climbing of "ropes, ladders or scaffolds;" and (6) did not require her to "work around hazards such as unprotected heights and/or dangerous/moving machinery." (Tr. 17).

13

As for Edwards' argument that the ALJ erred in his RFC assessment by not incorporating the suggested limitations by Dr. Beaty in regards to balance, weight, and Edwards' use of cane to ambulate, such an argument has no merit upon this record. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Here, the ALJ's decision not to incorporate all of Dr. Beaty's opinions into the RFC assessment is supported by the record. As noted by the ALJ, during her consultative examination with Dr. Beaty, Edwards had no trouble moving around the examination room, and without a walker could walk on her heels bilaterally and walk on her toes on the left. (Tr. 313). Moreover, Dr. Beaty's opinion was both equivocal and indefinite, given that Edwards was, at the time of Dr. Beaty's consultative examination, still in the post-operative recovery period. Edwards' additional complaint – that the ALJ erred in failing to specifically state that she was giving greater weight to the opinion of Dr. Barnes – also provides no basis for remand. While the ALJ did not specifically state that she was relying more on the opinion of Dr. Barnes than the earlier opinion of Dr. Beaty, the ALJ's RFC assessment makes it obvious that the ALJ was relying on Dr. Barnes' opinion as all the functional limitations found by the ALJ were consistent with those set forth by Dr. Barnes.

Because there are no expert medical opinions in the record that Edwards is unable to engage in substantial gainful activities, and because the expert medical opinions that are in the record, as a whole, support the ALJ's RFC assessment, and the determination that Edwards can engage in substantial gainful activities, the diagnosis and expert medical opinion factor weighs in favor of the ALJ's decision.

14

C.      **Subjective Evidence of Pain and Disability**

The third element considered is the subjective evidence of pain and disability, including the claimant's testimony and corroboration by family and friends. Not all pain and subjective symptoms are disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. In an appeal of a denial of benefits, the Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames v. Heckler,* 707 F.2d 162, 166 (5th Cir. 1983).

Edwards testified at the hearing on May 1, 2012, that she could not work due to back pain, which she described as follows:

Q:      Could you describe it to use?

A:      It's like a sharp, stabbing pain, muscle spasms, numbness, tingling and burning sensation.

Q:      And that's all located in your lower back area?

A:      Lower back and the tingling is on the right side of the leg.

Q:      Does it go down past your knee or does it stay above your knee?

A:      All the way to the foot.

Q:      Does that happen every day?

A:      Every day, constant.

Q:      What do you do, if anything, while at home to help curtail the pain?

A:      Over-the-counter aspirins, like ibuprofen, heating pads, ice packs and there's occasionally stretching.

Q:      Does that help?

15

A:      Yes.

(Tr. 39-40).  She also testified that she could sit for approximately twenty minutes before the pain

set in, could not lift more than ten pounds, and that she was more likely to have such pain on bad

weather days. (Tr. 39). The ALJ found that Edwards' testimony and her subjective complaints about

the severity of her back impairment not fully credible,  In doing so, the ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's
> medically determinable impairments could reasonably be expected to cause the
> alleged symptoms; however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not credible to the extent they
> are inconsistent with the above residual functional capacity assessment.

* * *

> . . . . During the hearing, when asked why she did not seek indigent care, she replied
> that she simply "pushed through the pain."  This admission, in and of itself, reflects
> the mild to moderate degree of her symptomology.

* * *

> . . . . She reports that over-the-counter treatment sometimes alleviates her pain,
> another indication that the pain is not as severe as alleged.

> In sum, the longitudinal medical evidence as well as the claimant's activities of daily
> living support the residual functional capacity. The claimant's subjective complaints
> are out of proportion to and not supported by the objective medical evidence.  While
> the claimant's impairments are severe in that they have more than a minimal effect
> on her ability to function, they are not totally disabling and do not preclude the
> performance of all substantial gainful activity.

(Tr. 18-21).

Credibility determinations, such as that made by the ALJ in this case in connection with

Edwards' subjective mental complaints, are generally within the province of the ALJ to make. *See*

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine

the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'")

(quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995).

Here, the ALJ supported her credibility determination with references to the medical evidence and

the testimony about Edwards' activities. In addition, the ALJ's credibility determination is supported

by Edwards' contradictory statement that she can only sit for 20 minutes, followed by her stating that

she could drive for 30 to 40 minutes. (Tr. 40, 42). Accordingly, the subjective complaints factor,

when viewed in the context of the ALJ's supported credibility determination, also supports the ALJ's

decision.

### D. Education, Work History and Age

The fourth element considered is the claimant's educational background, work history and

present age. A claimant will be determined to be disabled only if the claimant's physical or mental

impairments are of such severity that he is not only unable to do his previous work, but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

Here, at the time of the administrative hearing before the ALJ, Edwards was 42 years old,

she had a high school education, and had past relevant work as a warehouse order selector. (Tr. 21,

45, 134). Taking into consideration this information, the ALJ questioned the vocational expert as

follows about whether a person of Edwards' age, education, past work experience, and RFC could

perform her past work, or any other jobs that exist in significant numbers in the regional and national

economy:

> Q:    If you assume an individual who is the same age, education and work
>       experience as the claimant – she has the ability to perform – she has the
>       residual functional capacity to perform light work as defined in Social
>       Security Administration regulations, except she cannot climb ropes, ladders
>       or scaffolds.  She can bend, squat, stoop, crawl, crouch and kneel only

occasionally and she can only occasionally do overhead reaching. Are there any jobs such a person could do?

A:   You said occasional stoop, crawl –

Q:   All the postural.

A:   All the postural. Such a person could perform light, unskilled work and the jobs would include examples such as counter attendant. The <u>DOT</u> is 311.477-014, classified as light, unskilled work with an SVP:2. There are approximately – oh, for the regional area I will use Harris County and the nine surrounding counties – and there are 7,000 jobs in the regional area and 490,000 in the national economy. Such a person could also perform the work of an office helper. The <u>DOT</u> is 239.567-010, classified as light, unskilled work with an SVP: 2. There are 110 jobs in the regional area and 85,000 in the national economy. And such a person could also perform the work of an information clerk. The DOT is 237.367-018, classified as light, unskilled work with an SVP:2. There are approximately 5,000 jobs in the regional area and approximately 300,000 in the national economy.

Q:   Thank you. Now, I want you to take the same person, but limit them to sedentary work. They have the same nonexertionals, but I also want you to add that after every 20 minutes of sitting they need to stand and stretch in place at the work station, whatever, for about two minutes. Any jobs?

A:   No, Judge. I think that at that rate of having to alternate sit and stand, I think that might affect her ability to, her rate production, during the day. I don't think it would be satisfactory.

Q:   I'm talking a sedentary position where she doesn't leave her desk, but she just stands for two minutes to stretch. You're telling me that eliminates all jobs?

A:   I would think that if she had to do that every 20 minutes I think it could affect her rate of production at work.

Q:   If you add that the individual is additionally limited by severe pain and other symptoms that can cause periodic loss of concentration and attention to tasks, difficulties meeting attendance standards and would compromise her ability to perform work on a regular and continuous basis, as defined by Social Security regulations, could that person work?

A:   No.

(Tr. 45-47).

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Where the testimony of a vocational expert directly and obviously conflicts with information in the Dictionary of Occupational Titles ("DOT"), and where the issue of disability is determined at steps four or five, "the probative value and reliability of the [vocational] expert's testimony" is called into question. *Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000). Where, however, the testimony of a vocational expert only indirectly or impliedly conflicts with information and job descriptions in the DOT, the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. *Id.* at 146-147.

Here, the ALJ ultimately did not rely on the vocational expert's opinion (Tr. 21-22) because the results of the post-hearing examination by Dr. Barnes different from the record evidence at the time far more than expected, resulting in the hypotheticals that were asked of the vocational expert not matching the RFC found by the ALJ. The ALJ, instead, relied on the Medical-Vocational Guidelines in making her determination that Edwards was not disabled. In so doing, the ALJ wrote:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the

19

medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by the Medical-Vocational Rule 201.28. Postural limitations or restrictions related to climbing ropes, ladders or scaffolds, balancing, kneeling, crouching or crawling would not usually erode the occupational base for a full range of sedentary unskilled work significantly because those activities are not usually required in sedentary work (SSR 96-9p). Restrictions against unprotected elevations and proximity to dangerous, moving machinery are not significant at any exertional level (SSR 85-15). The need to avoid concentrated exposure to humidity and wetness, extreme cold and vibrations does not significantly erode the unskilled sedentary occupational base (SSR 96-9p, SSR 83-12, and SSR 83-14).

Based on the entire record, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(Tr. 21-22)

Edwards argues that the ALJ erred in relying on the Medical Vocational Guidelines to find her not disabled because the ALJ's RFC provided for her ability to do unskilled sedentary work, with a whole list of other limitations. But, contrary to Edwards' argument, the Medical-Vocational Guidelines can be used as a framework for determining disability as long as there is some evidence in the record that the additional limitations placed on a claimant's ability to perform work at a certain level do not significantly erode the jobs available at that level. *See McCuller v. Barnhart*, No. 02-30771, 72 F.App'x 155, 2003 WL 21954208 *5 (5th Cir. Aug. 15, 2003); SSR 96-9p, 1996 WL

362208 (1996).

Here, the ALJ, in explaining her reliance on the Medical-Vocational Guidelines, found that Edwards was able to perform many of the jobs administratively noticed in Table No. 1 notwithstanding her additional limitations. The ALJ also found, by reference to the contents of SSR 85-15 and SSR 96-9P, that Edwards' occupational base would not be significantly eroded by the additional, non-exertional limitations contained in the RFC. Given the evidence contained in SSR 85-15 and SSR 96-9 as to the erosion of the claimant's occupations base, the ALJ did not err in relying on the Medical Vocational Guidelines to determine disability. *See e.g. Breslin v. Commissioner*, No. 12-2385, 509 F.App'x 149, 154-155, 2013 WL 93159 (3d Cir. Jan. 9, 2013) (finding that the contents of SSR 96-9p provided substantial evidence in support of the ALJ's determination that a claimant's nonexertional limitations did not erode the claimant's occupational base); McCuller, 2003 WL 21954208 at *4-5 (upholding reliance on the Medical Vocation Guidelines where non-exertional limitations were found not to significantly erode the occupational base).

In addition, as set forth above, it is the Commissioner's burden at step five to show that there are jobs in significant numbers in the national and regional economy that the claimant can perform. *Perez v. Barnhart*, 415 F.3d 457, 451 (5th Cir. 2005). Once this burden is met, it is the claimant's burden to rebut it. *Id.*; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). By taking administrative notice of the approximately 200 jobs available at the sedentary level and then explaining how Edwards' additional limitations would not significantly erode that occupational base, the ALJ met the Commissioner's burden at step five. Edwards, who did not rebut that determination at step five, or show that the occupational base was significantly eroded by her additional limitations,

has not provided the Court in this appeal with a basis for remand.

## IV.    Conclusion and Order

Based on the foregoing and the conclusion that the decision of the Commissioner is supported by substantial evidence and that the decision comports with applicable law, including SSR 96-9p, it is

ORDERED that Defendant's Motion for Summary Judgment (Document No. 16) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 19) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 30th day of _____July_____, 2014.


FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE